IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

WANDA KEAHEY,

      Plaintiff,

vs.                                                    No. CIV-04-1392 JC/DJS

JUSTIN HUNT and
TODD HUDSON,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court upon Defendants' Motion for Summary Judgment, filed October 17, 2005 (*Doc.* 32). Defendants move for judgment in this case on the grounds that: (1) both Defendants are entitled to qualified immunity and (2) there are no genuine issues of material fact remaining. The Court has reviewed the Motion, the memoranda and exhibits submitted by the parties, and the relevant authorities. The Court finds the Motion to be **granted in part and denied in part**.

I.      Background

Plaintiff Wanda Keahey was stopped for speeding at the 2600 block of Eubank Street by Defendant Hunt, an officer of the Albuquerque Police Department, late on the night of March 17, 2004. Plaintiff does not dispute that she was speeding. During this stop, Plaintiff performed nstygmia and roadside intoxication examinations for Officer Hunt. These exams were apparently performed unsatisfactorily, and Plaintiff was arrested for driving while intoxicated. Plaintiff's car

was searched pursuant to this arrest, and Plaintiff revealed to Officer Hunt that she had a bong in her vehicle. Plaintiff claims that she also told Officer Hunt that the bong was broken and that she had confiscated it from her son in order to throw it away. Subsequently, Officer Hunt escorted Plaintiff to a breath machine station known as the "Batmobile," located in a parking lot at the intersection of Central and Broadway in downtown Albuquerque, but without her shoes, purse or other personal effects. Plaintiff tested negative for alcohol impairment at the breath station by blowing double zeros twice into the breath machine. Officer Hunt still suspected Plaintiff of being under the influence of drugs, however, and requested the help of a drug recognition expert ("DRE") qualified officers. None of these officers was available to assist him.

At this point, Plaintiff claims that she was released from custody and told by Officer Hunt that she was free to go. Plaintiff then allegedly complained about walking home late night at night without any money, cell phone, or shoes and asked Officer Hunt if he could drive her home. Plaintiff claims that while she waited in the car, Officer Hunt called his supervising Officer, Sergeant Hudson, to ask if Defendant Hunt could drive Plaintiff home. After this phone call, Plaintiff claims that she was re-arrested by Officer Hunt for possession of drug paraphernalia and speeding, and subsequently booked in jail for the night. Officer Hunt claims, however, that Plaintiff was never released from custody, and that he was only calling Sergeant Hudson in order to tell him of the plan to book Plaintiff for the drug paraphernalia and speeding charges. It is disputed whether these charges were actually ever pursued against Plaintiff.

Plaintiff now brings this § 1983 action which claims that Officer Hunt re-arrested her in retaliation for her complaint about the nature of her release that night in downtown Albuquerque. She asserts that this retaliation violated her right to freedom of speech under the First Amendment

and her right to the exercise of due process under the Fourteenth Amendment.  Plaintiff also claims that the re-arrest violated her Fourth Amendment right to be free from arrest and seizure without probable cause.  Defendants Hunt and Hudson claim that they have qualified immunity for their actions, and that no genuine issues of material fact exist as to Plaintiff's claims.

## II.   Standard of Review

Under FED. R. CIV. P. 56, summary judgment is proper in cases where, looking at the facts in the light most favorable to the non-moving party, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Handy v. Price*, 996 F.2d 1064, 1066 (10th Cir. 1993).  The moving party bears the initial burden of establishing that no genuine issue exists as to any material fact.  *Nat'l Union Fire Ins. Co. v. Emhart Corp.*, 11 F.3d 1524, 1528 (10th Cir. 1993).  Once the initial burden has been met, the burden then shifts to the non-moving party to show that a genuine issue of material fact remains for the fact finder to resolve.  *Thrifty Rent-A-Car Sys., Inc. v. Brown Flight Rental One Corp.*, 24 F.3d 1190, 1194 (10th Cir. 1994).  The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Biester v. Midwest Health Services, Inc.*, 77 F.3d 1264, 1266 (10th Cir. 1996) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-586 (1986)).

## III.  Discussion

### A.   Qualified Immunity

The doctrine of qualified immunity provides that "governmental officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity leaves "ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). When a defendant raises the affirmative defense of qualified immunity in a summary judgment motion, the burden shifts to the plaintiff to establish that the defendant's actions violated a constitutional or statutory right, and that this right was clearly established at the time of the defendant's unlawful conduct. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). If the plaintiff is able to establish a violation of constitutional or statutory right, the burden shifts back to the defendant to prove "no material issues of fact remain as to whether the defendant's actions were objectively reasonable in light of the law and the information the defendant possessed at the time of his actions." *Guffey v. Wyatt*, 18 F.3d 869, 871 (10th Cir. 1994) (citation omitted).

As Defendants argue that they are protected under the doctrine of qualified immunity for each of Plaintiff's claims, the Court must examine each claim to see if a statutory or constitutional right was violated, and if so, whether the Defendants acted reasonably in light of that fact.

**B.     Plaintiff's Claims**

1.     Retaliation for Exercise of Fourteenth Amendment Right to Due Process

Plaintiff claims she was retaliated against for exercising her Fourteenth Amendment right to due process when she complained that she was being released at least ten miles from her home, without her shoes, money or a cell phone.

Plaintiff specifically outlines how police officers could violate the due process rights of someone in their custody, but this is not material to Plaintiff's claim. Indeed, it only clouds the issue that Plaintiff does not assert that her rights were actually violated, but that she was retaliated

4

against for asserting through her speech that her rights existed.  Plaintiff's second count of her complaint encompasses a claim for retaliation for the exercise of her First Amendment right to freedom of speech.  The Court construes Plaintiff's retaliation for the exercise of her right to freedom of speech claim to encompass this retaliation claim as well.

Plaintiff may have asserted that she had rights under the Fourteenth Amendment through her complaint to Officer Hunt, but it does not appear that any Fourteenth Amendment right to due process was violated in the night in question.  It has been well established that Plaintiff was definitely not abandoned at Broadway and Central, but was instead either kept in or returned to custody, which was a safe and non-dangerous option.  Because this occurred, albeit for whatever reason, there was no violation of Plaintiff's Fourteenth Amendment rights in this case.

Furthermore, Plaintiff did not exercise her Fourteenth Amendment right to due process in a clearly tangible way, such as retaining a lawyer or presenting a defense at trial.  Instead, Plaintiff exercised the rights guaranteed to her under the First Amendment to voice concerns about other rights.  Here, Plaintiff's two claimed exercises of rights are indistinguishable from each other.  Plaintiff's speech only encompasses the actual exercise of one right, although Plaintiff's right to engage in protected speech may have been utilized to speak about another one of her existing rights.  In the end, however, only Plaintiff's speech remains an issue when analyzing whether she was a victim of retaliation.

      2.      Retaliation for Exercise of First Amendment Right to Freedom of Speech

Plaintiff claims that when she demanded a ride home and complained about her alleged release, she was exercising her First Amendment right to freedom of speech.  The First Amendment does protect a plethora of speech directed at officers.  *See Chaplinsky v. State of*

*New Hampshire*, 315 U.S. 568, 570-72 (1942); *Guffey*, 18 F.3d at 872.  As noted in *City of Houston, Tex. v. Hill*, 482 U.S. 451, 462-63 (1987), "[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." Indeed, pure speech is protected, unless the words themselves inflict injury, evoke immediate violence, or otherwise breach the peace. These are known as "fighting words," and are not protected. *Id*. at 463, n.10. Here, as noted above, Plaintiff was expressing her concern about police action and speaking about her right to due process under the Fourteenth Amendment, albeit in an unsophisticated manner. The Fourteenth Amendment is implicated when citizens are arrested or taken into custody, and police officers have been found to have a duty to release their detainees into a safe environment. *See Christiansen v. City of Tulsa*, 332 F.3d 1270, 1280 (10th Cir. 2003); *Wood v. Ostrander*, 879 F.2d 583, 590 (9th Cir. 1989).  When Plaintiff spoke about her right to this sort of protection, she did not come close to asserting the type of "fighting words" that are not protected.  Thus, the Court concludes that Plaintiff's speech was clearly protected.

   This is not the only analysis, however, to be performed.  The Court must still examine whether Defendants actually violated Plaintiff's right to engage in First Amendment protected speech by re-arresting her.  If Officer Hunt reasonably believed that he could arrest Plaintiff solely because of her speech, he would be entitled to qualified immunity.

   The ultimate issue in this case does not rest on whether Plaintiff's first arrest was proper. Plaintiff has already conceded that it was.  The only question remaining is whether Plaintiff's alleged re-arrest was made upon the basis of her speech and not upon any other objectively reasonable basis. Plaintiff cites to *Poole v. Otero*, 271 F.3d 955 (10th Cir. 2001), for the authority

that an arrest made on the basis of protected speech is improper, even if the arrest would have otherwise been proper. *Poole* is distinguishable from the present facts, however, in that the protected activity in question in *Poole* was filing a civil rights claim which resulted in retaliatory prosecution of completely separate charges, and not a verbal exchange during what was essentially a prolonged traffic stop. *Id.* at 958. Indeed, Mr. Poole's First Amendment claim pertained to his right of access to the courts and not to any actual speech, as is the case here. *Id.* at 959.

The determining fact as to whether this arrest would have been objectively reasonable is whether Plaintiff was actually told that she was free to leave, but then subsequently re-arrested. The Court cannot determine from the briefing whether this event occurred, and indeed, it comes down to an issue of credibility between Plaintiff and Officer Hunt. This is not an issue for the Court to decide as a matter of law. From the facts, presented in the briefing, however, it appears that the alleged re-arrest could have been made solely on the basis of Plaintiff's speech. Plaintiff consistently states in her deposition that at some point after performing her breathalyzer test, her handcuffs were taken off and she was told that she was free to leave. *See* Plf.'s Dep. 20:18; 24:3-21, 55:13-16, 66:15-20. Plaintiff also consistently states that only after being told that she was free to leave did she complain about the manner in which she was to return to her home. *See* Plf.'s Dep. 74:5-13  Although Plaintiff did sit in the back of Officer Hunt's patrol car while still apparently believing that she was not in custody, this is also consistent with her belief that Officer Hunt was going to be driving her home. *See* Plf.'s Dep. 4:22-25, 75:1-2.

Because the Court finds that a jury could reasonably believe Plaintiff's version of events, it is now the Defendants' burden to show that this re-arrest was an objectively reasonable action.

7

As the Defendants contest that the re-arrest even occurred, the Court must look at whether a re-arrest made purely because of Plaintiff's speech would have been objectively reasonable. The Court determines that this cannot be so. The Court cannot conclude that a reasonable police officer would believe he had probable cause to re-arrest the Plaintiff in this situation. Arrests have been held to be without probable cause when based solely on verbal challenges to the police. *See Sandul v. Larion*, 119 F.3d 1250, 1254-56 (6th Cir. 1997); *Duran v. City of Douglas*, 904 F.2d 1372, 1378 (9th Cir. 1990). Therefore, as several material issues of fact, pertaining to whether Defendants' actions were reasonable, clearly remain in question, the Court cannot grant summary judgment on the basis of qualified immunity as to this claim.

        3.        Seizure and Arrest without Probable Cause

Plaintiff claims her Fourth Amendment rights to be free from unreasonable seizure and arrest without probable cause were violated when she was allegedly re-arrested after being released at the breath machine site. This argument depends, in large part, on the same analysis as above: whether Plaintiff was actually released from custody and then re-arrested, and whether these actions could be still be found objectively reasonable, in light of the law and the information that Defendants possessed.

"Probable cause exists where the facts and circumstances within the officers' knowledge, and of which they have reasonable trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *United States v. Maher*, 919 F.2d 1482, 1485 (10th Cir. 1990) (citations omited). The existence of probable cause depends upon the reasonableness of an officer's conduct under particular circumstances, and therefore, claims that challenge the basis of an arrest usually present factual

8

questions to be resolved by a jury. *See Deloach v. Bevers*, 922 F.2d 618, 623 (10th Cir. 1990).

These same factual inquiries arise when a police officer asserts that he is entitled to qualified immunity. As the Tenth Circuit noted in *Reiss v. Luchetta*, numerous courts have concluded that "controverted factual issues regarding an arrestee's conduct sufficed to defeat a defendant police officer's motion for summary judgment on qualified immunity grounds. 78 F.3d 597, 4 (unpublished 1995 WL 87051) (10th Cir. 1996) (citing *Guffey*, 18 F.3d at 873; *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1305-06 (5th Cir. 1995); *Cook v. Sheldon*, 41 F.3d 73, 77-79 (2d. Cir. 1994); *Arnott v. Mataya*, 995 F.2d 121, 123 (8th Cir. 1993); *Gainor v. Rogers*, 973 F.2d 1379, 1385 (8th Cir. 1992); *Barlow v. Ground*, 943 F.2d 1132, 1134-36 (9th Cir. 1991); *Hansen v. Black*, 885 F.2d 642, 644 (9th Cir. 1989)).

Considering these factual issues in a light most favorable to Plaintiff, it is unlikely that this re-arrest could be found to be an objectively reasonable action by Officer Hunt. Here, probable cause undisputedly existed as to the primary arrest. However, this probable cause was not enough to support a second arrest, according to Plaintiff's version of events. Both offenses that Plaintiff was arrested for were capable of being only citeable, or non-arrestable, offenses. *See* Def. Hudson Dep. 16:11-21; Def. Hunt Dep. 91:13-25, 92:1-3. Indeed, Officer Hunt clearly indicated that when he first was aware of the presence of the bong in Plaintiff's vehicle, he did not make a decision whether to even charge Plaintiff with that offense. Def. Hunt Dep. 47:5-7. Therefore, it is completely plausible that Plaintiff could have been arrested with adequate probable cause at first, released with either a citation or even no consequences, but then arrested again without any additional probable cause. No other acts have been asserted which would give rise to the existence of probable cause for an additional citation or arrest for speeding or possession of

drug paraphernalia. So, the original probable cause must have been enough to encompass the second arrest as well for it to be constitutional. This was not the case.

In *Garionis v. Newton*, a factually dissimilar case, the necessity of additional probable cause for a re-arrest was pondered. 827 F.2d 306 (8th Cir. 1987). Mr. Garionis was arrested for electioneering at a polling place and escorted to the parking lot. *Id*. at 308. While in the parking lot, and speaking to another officer about the situation, Mr. Garionis was told to be quiet and that he was under arrest. *Id*. at 310. He was then placed in the back of a police vehicle and taken to jail. *Id*. Mr. Garionis eventually brought suit and claimed that there had to be new and independent probable cause to support this second arrest. *Id*. The Eighth Circuit held that "a person who is already under arrest and in police custody cannot be 'rearrested.' An arrest presumes that the person arrested was at liberty, free from police custody, before the arrest. This premise does not hold when the subject is already in custody of law-enforcement officers." *Id*. (citing *Kelley v. Swenson*, 481 F.2d 86, 88 (8th Cir. 1973); *United States v. Rundle*, 450 F.2d 517, 520 (3d. Cir. 1971); *Hayes v. United States*, 367 F.2d 216, 221 (10th Cir. 1966)). The court went on to make clear, though, that in the facts before them there was no allegation, or even a basis for allegation, that the man had been released from the custody of his first arrest. *Garionis*, 827 F.2d at 310. In *Garionis*, no real dispute about the facts of the primary arrest existed. Here, however, whether Plaintiff was actually released from the custody of her first arrest is a fact that is in dispute. Indeed, here, as opposed to the facts in *Garionis*, there is an allegation that Plaintiff was released from custody. Further, whether a second arrest even occurred is a fact that is in dispute. Therefore, as there are several controverted factual issues regarding the arrest(s) and Plaintiff's conduct, qualified immunity is not granted as to this claim.

10

### C.     Qualified Immunity as to Sergeant Hudson

In the now two remaining counts of Plaintiff's Complaint, Officer Hunt was the only Defendant to actually have contact with Plaintiff and to make decisions that should have been objectively reasonable in light of that contact.  Sergeant Hudson, on the other hand, had only one factually undisputed phone call with Officer Hunt regarding Plaintiff.  *See* Def. Hunt Dep. 45:8-9. This phone call was described by both officers as more of an informational relay than a transfer of orders to a subordinate officer. *See* Def. Hunt's Dep. 59:20-22; 60:7-9; Def. Hudson's Dep. 12:17-20 (describing phone calls in general as advisory).  Plaintiff cannot rebut the content of this phone call except by mere speculation.  Plaintiff's only factual connection to Sergeant Hudson was that she believed Officer Hunt said he was booking her because his superior told him to. Plf.'s Dep. 31:5-6,14-15.  Whether this was an accurate statement is called into doubt by the depositions of Officer Hunt, Sergeant Hudson, and even Plaintiff herself.  Indeed, Plaintiff admits that she could not hear what Officer Hunt was saying or what the person he called was saying when the phone calls were made.  *See* Plf.'s Dep. 21:6-13; 25:6-20; 30:1.

Even if the phone-call scenario did occur exactly as Plaintiff envisions it, it still does not sufficiently implicate Sergeant Hudson as violating Plaintiff's rights in either count.  Speeding on its own is only a citeable offense.  Possession of drug paraphernalia, even when coupled with an offense like speeding, is still discretionary as to whether an officer arrests or cites a suspect.  *See* Def. Hudson Dep. 16:11-12.  The minor stature of both of these offenses lends credence to the idea that Officer Hunt was not calling Sergeant Hudson for orders on how to proceed.  Both offenses Plaintiff was arrested for were discretionary, the common practice was  apparently not to call for orders, and it was clearly Officer Hunt's decisions and actions which may have violated

11

Plaintiff's rights. Even viewing these facts in the light most favorable to Plaintiff, there is not sufficient evidence to implicate Sergeant Hudson in these claims. Therefore, Defendant Hudson is dismissed as to all counts with prejudice.

Wherefore,

**IT IS ORDERED** that Count I of Plaintiff's Complaint is **dismissed**.

**IT IS FURTHER ORDERED** that Defendant Hudson is **dismissed** as a party to all counts of Plaintiff's Complaint.

**IT IS FINALLY ORDERED** that Defendants' Motion for Summary Judgment (*Doc*. 31), filed October 17, 2005, as to Counts II and III is **denied**.

DATED this 14th day of March, 2006.

_____
**SENIOR UNITED STATES DISTRICT JUDGE**

Counsel for Plaintiff:

    Matthew Coyte, Esq.
    Albuquerque, New Mexico

Counsel for Defendants:

    Peter H. Peirotti, Esq.
    Assistant City Attorney
    Albuquerque, New Mexico